IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CATHY BOLANOS,

      Plaintiff,

vs.                                        No. CIV 05-1062 RB/LAM

GADSDEN INDEPENDENT SCHOOL
DISTRICT, GADSDEN INDEPENDENT
SCHOOL DISTRICT BOARD, MARTHA
GALLEGOS, in her official and individual
capacities, SELMA RAMOS-NEVAREZ,
in her official and individual capacities,
and RON HAUGEN, in his official
and individual capacities,

      Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** came before the Court on Defendants' Motion for Summary Judgment (Doc.26), filed on August 8, 2006.  Plaintiff ("Ms. Bolanos") seeks recovery under 42 U.S.C. § 1983 and the New Mexico Tort Claims Act, ("NMTCA"), N.M. Stat. Ann. §41-4-1 through 41-4-27.  Jurisdiction arises under 28 U.S.C. § 1331 and 1367(a).  Having considered the record, arguments of counsel, relevant law, and being otherwise fully advised, I find that this motion should be denied as to the First Amendment claim and granted as to the state-law claims.

**I.**      **Facts.**

The following statement of facts is set forth in the light most favorable to Plaintiff ("Ms. Bolanos"), with all reasonable inferences from the record drawn in her favor.  *See Fuerschbach v. Southwest Airlines Co.*, 439 F.3d 1197, 1207 (10th Cir.2006).  "Ms. Bolanos" holds a Masters Degree in Counseling and over twenty years of teaching experience.  (Bolanos Decl. ¶ 1.)  Ms.

Bolanos is currently employed by Defendant Gadsden Independent School District ("GISD") as a teacher at Santa Teresa High School. (*Id.*)

From 1998 until January 2003, Ms. Bolanos was employed by GISD as a lead special education teacher at Alliance Hospital in Santa Teresa, New Mexico ("Alliance"), a privately-owned psychiatric and substance abuse hospital that operates a residential treatment center for children with psychiatric disorders. (Bolanos Decl. ¶¶ 2-3.) GISD, in cooperation with Alliance, operates an education program ("Program") for children in residential treatment at Alliance. (Bolanos Decl. ¶ 3.) From 1998 until August of 2002, Ms. Bolanos performed the duties of acting administrator of the Program. (Bolanos Decl. ¶¶ 2, 4.)

In order to receive funding for its special education program, GISD is required to submit a "forty-day report" ("Report") to the State of New Mexico that documents the number of students enrolled in the Program. (Bolanos Decl. ¶ 5.) The level of funding for the Program is directly related to the number of students enrolled. (*Id.*) Students enrolled for a full day of instruction are identified as "Level D" students, and students enrolled for a partial day of instruction are identified as "Level C" students. (Bolanos Decl. ¶ 6.) GISD receives several thousand dollars more in funding for Level D students than it does for Level C students. (*Id.*)

In August 2002, Defendant Martha Gallegos was appointed on-site principal of the Program and assumed the administrative duties previously performed by Ms. Bolanos. (Bolanos Decl. ¶ 4.) After Ms. Gallegos became the administrator, Ms. Bolanos focused on providing instruction to the students in the program. (*Id.*) As a teacher, Ms. Bolanos had no direct input to the Report, which was prepared by Ms. Gallegos, the administrator. (Lindau Aff., Def. Ex. 5 ¶ 13.)

In September 2002, Ms. Gallegos ordered Ms. Bolanos to identify Level C students who

could be characterized as Level D students on the Report.  (Bolanos Decl. ¶ 7.)  Ms. Bolanos refused the request because she believed that such a report would be inaccurate.  *Id*.  Ms. Bolanos believed that there were no students in the Program classified as Level C who could have legitimately qualified for the Level D classification.  (*Id*.)

Subsequently, Ms. Bolanos learned that the Report submitted by Ms. Gallegos contained entries that Ms. Bolanos believed were fraudulent. (Bolanos Decl. ¶ 8.) The allegedly fraudulent entries resulted in an overpayment of public funds to GISD.  (*Id*.)  Specifically, Ms. Bolanos asserts that the Report misidentified Level C students as Level D students, falsely claimed that Scott Pelking was a teacher with Level C students, and included students who were not in the Program during the relevant time period.  (*Id*.)

Ms. Bolanos complained about the allegedly fraudulent entries in the Report to Ms. Gallegos and Defendant Selma Ramos-Nevarez, Director of Special Education for GISD.  (Bolanos Decl. ¶ 9.)  In response, Ms. Gallegos and Ms. Ramos-Nevarez advised Ms. Bolanos to "keep her mouth shut" and become a "team player."  (*Id*.)  Unsatisfied with this response, Ms. Bolanos reported the allegedly fraudulent entries in the Report to Defendant Ron Haugen, the GISD Superintendent, in November 2002. (Bolanos Decl. ¶ 10.)  Mr. Haugen advised Ms. Bolanos that he would "take care of it."  (*Id.*)

Instead of correcting the Report, Ms. Gallegos, Ms. Ramos-Nevarez, Mr. Haugen ("Individual Defendants") and the GISD Board retaliated against Ms. Bolanos by transferring her to the position of "Recycling Teacher" at Santa Teresa High School, effective January 2003, immediately following the winter break.  (Bolanos Decl. ¶ 11.)  As the Recycling Teacher, Ms. Bolanos was required to pick up trash around the school.  (*Id*.)  The transfer reduced her salary by

$19,000.00 per year and curtailed her promotional opportunities.  (Bolanos Decl. ¶ 12.)

After her transfer, Ms. Bolanos filed a police report with the New Mexico State Police concerning the allegedly fraudulent entries in the Report.  (Defs.' Undisputed Material Facts ¶ 27.) After an investigation, the New Mexico Department of Education determined that no independent education plans could be located for four of the eight students that GISD claimed for add-on funding and that the criteria for determining the level of service for students in homebound/hospital settings (the Level C/Level D categorization) was ambiguous.  (Def. Ex B 5.)  As a result, the NMDOE decreased the GISD budget authority for the 2003-04 school year by $4,942.20 and clarified the guidelines for determining the Level C/Level D categorization.  (*Id.*)

Ms. Bolanos remains employed as a teacher at Santa Teresa High School at the reduced salary.  (Bolanos Decl. ¶ 12.)  In addition to the loss of salary and promotional opportunities, the demotion and transfer caused her emotional distress requiring continuing psychiatric care.  (*Id.*)

On October 5, 2005, Ms. Bolanos filed suit in this Court, alleging state-law claims for whistle-blower retaliation, intentional infliction of emotional distress, and prima facie tort against GISD and the GISD Board ("GISD Defendants").  On January 2, 2006, Ms. Bolanos filed a First Amended Complaint, adding a 42 U.S.C. §1983 First Amendment retaliation claim against all Defendants, dropping the state-law claims against the GISD Defendants, and adding claims for intentional infliction of emotional distress and prima facie tort against the Individual Defendants in their individual capacities.  Ms. Bolanos seeks compensatory damages, punitive damages, attorney fees, and costs.

Defendants seek summary judgment on all claims, arguing that Ms. Bolanos failed to establish a First Amendment violation, the Individual Defendants are entitled to qualified immunity, and the

state-law claims are barred by the NMTCA two-year statute of limitations and the NMTCA does not waive sovereign immunity for such claims.

**II.      Standard.**

A motion for summary judgment may be granted only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is appropriate "only where 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Fuerschbach*, 439 F.3d at 1207 (quoting Rule 56(c)). The evidence, and all reasonable inferences drawn therefrom, must be viewed in the light most favorable to the nonmoving party.

**III.      Discussion.**

   **A.     Defendants are not entitled to summary judgment on the First Amendment Claim.**

"[T]he First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos*, 126 S.Ct. 1951, 1957 (2006). The "overarching objectives" of First Amendment jurisprudence strike a balance between the government's right as an employer to promote efficiency in the provision of public services and the employee's right as a citizen to comment on matters of public concern. *Id.*, 126 S.Ct at 1958. The Court's decisions seek "both to promote the individual and societal interests that are served when employees speak as citizens on matters of public concern and to respect the needs of government employers attempting to perform their important public functions." *Id.*

To achieve this balance, the Court applies the analysis originally articulated in *Pickering v.*

*Bd. of Educ.*, 391 U.S. 563 (1968). *See Garcetti*, 126 S.Ct. at 1958; *Baca v. Sklar*, 398 F.3d 1210, 1220 (10th Cir.2005). The employee must show that (1) she spoke as a citizen on a matter of public concern; (2) her interest in engaging in the speech outweighed the government employer's interest in regulating it; and (3) that the speech was a substantial motivating factor behind the government's decision to take an adverse employment action against the employee. *Baca,* 398 F.3d at 1220.

If an employee proves these three factors, the burden shifts to the employer to prove a fourth factor; "by a preponderance of the evidence that it would have reached the same decision . . . even in the absence of the protected conduct." *Baca,* 398 F.3d at 1220 (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). The first two steps are legal questions designed to determine whether the First Amendment protects the employee's speech, the second two factors concern causation and involve questions of fact designed to determine whether the adverse employment action was in retaliation for the protected speech. *See Dill v. City of Edmond*, 155 F.3d 1193, 1202 (10th Cir.1998).

In *Garcetti*, the Court held that the "controlling factor" in determining whether a public employee's speech is protected is whether those expressions were made pursuant to the employee's official duties: "We hold that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti*, 126 S.Ct 1960.

The primary inquiry under *Garcetti* is whether the speech was uttered pursuant to the plaintiff's job duties, or pursuant to her role as a citizen. *See Green v. Board of County Comm'rs*, ____ F.3d ____, 2007 WL 4210 *3 (10th Cir. Jan. 2, 2007). In *Garcetti*, it was undisputed that the speech was part of the plaintiff's official duties. *Garcetti*, 126 S.Ct. at 1961. Thus, the Court had

6

"no occasion to articulate a comprehensive framework for defining the scope of an employee's duties in cases where there is room for serious debate." *Id.*, 126 S.Ct. at 1961.  In such cases "[t]he proper inquiry is a practical one." *Id.*  In *Green*, the Tenth Circuit applied such a practical approach in a disputed case by identifying the speech, examining the plaintiff's job description, and comparing the fundamental  nature of the job duties with the practical effect of the speech. *Id.*, 2007 WL 4210 at *4-6.

In Ms. Bolanos' case, the speech at issue consists of (1) complaints and objections to Ms. Gallegos and Ms. Ramos-Nevarez regarding the discrepancies in the Report in September or October 2002; and (2) the complaint to Mr. Haugen regarding the discrepancies in November 2002.

At the time she voiced her complaints and objections, Ms. Bolanos was employed as a special education teacher.  In *Green*, the Tenth Circuit reviewed the plaintiff's job description to ascertain the scope of her responsibilities.  Unlike the record in *Green*, the record herein does not contain a job description.  However, a job description "is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes." *Green*, 2007 WL 4210 at *4 (quoting *Garcetti*, 126 S.Ct. at 1962).  While a job description may be helpful to illustrate the scope of an employee's duties, it is not vital to the analysis and unnecessary to resolve the issue at hand.

Defendants have submitted evidence that the Report was outside the scope of Ms. Bolanos' professional duties.  Carolyn Lindau, Compliance Officer for GISD, stated in an affidavit "[w]ith respect to Ms. Bolanos, as a teacher, she would have no direct input on to [sic] the forty day report which was done by Ms. Gallegos, the administrator." (Def. Ex. B.)  The Lindau Affidavit establishes that Ms. Bolanos' duties, after August 2002, did not include direct responsibility for the Report.  The

admonitions from Ms. Gallegos and Ms. Ramos-Nevarez to "keep her mouth shut" further suggest that Ms. Bolanos' official duties did not include speaking out about perceived errors in the Report. These factors establish that Ms. Bolanos spoke as a citizen, and not as a special education teacher, when she complained about the allegedly fraudulent entries in the Report.  Because Ms. Bolanos spoke as a citizen, and not as an employee, her speech was not exempted from First Amendment protection under *Garcetti*.[1]

The speech involved a matter of public concern.  "Speech which discloses any evidence of corruption, impropriety, or other malfeasance on the part of public officials, in terms of content, clearly concerns matters of public import." *Prager v. LaFaver*, 180 F.3d 1185, 1190 (10th Cir.1999). Ms. Bolanos spoke out about discrepancies on an official report submitted by GISD to the State in order to receive funding for public education.  The Report resulted in an overpayment to GISD. "[T]he question whether a school system requires additional funds is a matter of legitimate public concern . . . ." *Pickering*, 391 U.S. at 571-72.  Ms. Bolanos' complaints regarding the discrepancies clearly touched on a matter of public concern.[2]

Ms. Bolanos' interest in engaging in the speech outweighed GISD's interest in regulating it. In determining whether a public employee's interest in engaging in the speech outweighed the government employer's interest in regulating it, the court must examine the manner, time, and place of the speech, as well as the context in which the dispute arose. *Connick v. Myers*, 461 U.S. 138,

---

[1] While I find that Ms. Bolanos's speech was uttered pursuant to her role as a citizen, the *Garcetti* distinction may not apply to expression related to academic scholarship or classroom instruction. *See Garcetti*, 126 S.Ct at 1962.

[2] Defendants imply that the speech did not touch on a matter of public concern because the Individual Defendants did not personally benefit from the alleged malfeasance.  This implication is unsupported by the case law.  A plaintiff need not show an official personally benefitted from an impropriety.  *See Baca*, 398 F.3d at 1220.

152-53 (1983).  Also relevant is the disruption caused by the employee's speech, namely, "whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise." *Weaver v. Chavez*, 458 F.3d 1096, 1100 (10th Cir.2006) (quoting *Rankin v. McPherson*, 483 U.S. 378, 388 (1987)).  The burden is on the employer to establish such disruptive effects.  *Weaver*, 458 F.3d at 1100 (citing *Dill*, 155 F.3d at 1204 n. 5)).

Defendants focus on Ms. Bolanos' subsequent grievance concerning her transfer.  (Defs', Mem. in Support of Mot. for Summ. J. at 7-9 and 10-11.)  Ms. Bolanos does not allege that her grievance is entitled to First Amendment protection; she asserts that her complaints concerning the Report are protected speech. (First Am. Compl. ¶¶ 18-26.)  Thus, the proper focus is on the manner, time, place, context, and any disruption caused by her complaints concerning the Report.  Ms. Bolanos voiced her concerns to her supervisor, an administrator of the Program and the Superintendent.  Defendants failed to establish that the speech had a disruptive effect on the Program. Under these circumstances, Ms. Bolanos' interest in engaging in the speech outweighed GISD's interest in regulating it.

At the third step of the *Pickering* analysis, the employee must show the protected speech played a substantial part in the employer's decision to adversely alter her conditions of employment. *Maestas v. Segura*, 416 F.3d 1182, 1188 (10th Cir.2005).  Adverse action in close proximity to protected speech, combined with expressions by the employer in opposition to speech and evidence the speech implicated the employer in serious misconduct, supports an inference of causation.  *See id.*

9

After Ms. Bolanos complained to Mr. Haugen in November 2002, she was notified of her reassignment effective immediately following the winter break in January 2003. Thus, there was close temporal proximity between the speech and the transfer. The temporal proximity was accompanied with expressions opposed to the speech and indications of official misconduct. When Ms. Bolanos voiced her concerns about the Report to Ms. Gallegos and Ms. Ramos-Nevarez, they tried to silence her. The speech implicated GISD in wrongdoing in that the police report resulted in an investigation and reduction in the GISD budget. Taken together and construed in the light most favorable to Ms. Bolanos, these factors are sufficiently probative of causation to withstand summary judgment on the causation step of the *Pickering* analysis.

In an effort to establish the fourth step, that is to show that they would have transferred Ms. Bolanos even if she had not engaged in the speech, Defendants rely on disputed facts concerning alleged problems between Ms. Bolanos and other employees at Alliance. In affidavits, Ms. Gallegos and Ms. Ramos-Nevarez stated that Ms. Bolanos had difficulties interacting with Alliance staff and criticized a fellow teacher in front of students. (Def. Ex. A, ¶ 11 and 18, Def. Ex. C, ¶¶ 9-11.) In her declaration, Ms. Bolanos denied that such interactions occurred. (Bolanos Decl. ¶¶ 20-21.) Construed in the light most favorable to Ms. Bolanos, disputed issues of material fact exist as to whether Defendants would have transferred Ms. Bolanos in the absence of her complaints about the Report.

Defendants maintain that Ms. Bolanos was not subjected to an adverse employment action. "Implicit in the *Pickering* test is a requirement that the public employer have taken some adverse employment action against the employee." *Moya v. Schollenbarger*, 465 F.3d 444, 456 (10th Cir.2006). A public employer can violate an employee's First Amendment rights by subjecting her

10

to repercussions that would not constitute adverse employment actions under Title VII. *Baca v. Sklar*, 398 F.3d at 1220.

Defendants state in their brief that Ms. Bolanos remained employed at the same rate of pay. Ms. Bolanos avers that her salary was reduced by $19,000.00, she received an unfavorable transfer, a humiliating assignment, and loss of promotional opportunities. A yearly salary reduction of $19,000.00 qualifies as an adverse employment action. *See Orr v. City of Albuquerque*, 417 F.3d 1144, 1150 (10th Cir.2005) (observing that diminution of compensation qualified as adverse employment action under Title VII). Defendants are not entitled to summary judgment on the First Amendment claim.

**B.      The Individual Defendants are not entitled to qualified immunity.**

Government officials are entitled to qualified immunity from liability for civil damages under § 1983 when their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The qualified immunity analysis involves two steps: (1) whether the alleged conduct violated a constitutional right, and if so, (2) whether the law was clearly established at the time of the defendant's actions. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

"It is clearly established that a State may not discharge an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech." *Weaver*, 458 F.3d at 1099 (quoting *Rankin*, 483 U.S. at 383). Construed in the light most favorable to Ms. Bolanos, the record establishes a First Amendment violation. Thus, Defendants are not entitled to qualified immunity.

**C.      Summary judgment appropriate on state-law claims.**

Defendants argue that the state-law claims are barred because NMTCA does not waive

11

sovereign immunity for the state-law causes of action and they are barred by the NMTCA's two-year statute of limitations.  The First Amended Complaint alleges state-law claims for intentional infliction of emotional distress and prima facie tort ("Counts 2 and 3") against the Individual Defendants in their individual capacities.  (First. Am. Compl. ¶¶ 32 and 35.)

Ms. Bolanos does not argue that the NMTCA waives immunity for Counts 2 and 3 or that she met the two-year statute of limitations.  Instead, Ms. Bolanos contends that, because the Individual Defendants were acting outside their scope of duties, the NMTCA is inapplicable and the Individual Defendants are not immune.

This argument misconstrues the statutory scheme of the NMTCA.  *See Vigil v. State Auditor's Office,* 138 N.M. 63, 67, 116 P.3d 854, 858 (Ct. App. 2005) (rejecting similar argument).  Under the NMTCA, the State is only liable for torts committed by public employees while acting within their "scope of duties."  *See* N.M. Stat. Ann § 41-4-4(D).  The NMTCA defines "scope of duties" as "performing any duties that a public employee is requested, required or authorized to perform by the governmental entity, regardless of the time and place of performance." N.M. Stat. Ann. § 41-4-3(G).

The scope of duties is not limited to acts "officially requested, required or authorized because, contrary to legislative intent, it would render all unlawful acts, which are always unauthorized, beyond the remedial scope of the [NM]TCA." *Celaya v. Hall*, 135 N.M. 115, 121, 85 P.3d 239, 245 (2004). In order for an act to be within the scope of duties "there must be a connection between the public employee's actions at the time of the incident and the duties the public employee was "requested, required or authorized" to perform." *Id.* (citing § 41-4-3(G)).

Ms. Bolanos alleges the Individual Defendants committed prima facie tort and intentional infliction of emotional distress when they arranged for her transfer. The NMTCA "clearly

contemplates including employees who abuse their officially authorized duties, even to the extent of some tortious and criminal activity." *Id.* (discussing *Risk Mgmt. Div. v. McBrayer,* 129 N.M. 778, 783, 14 P.3d 43, 48 (Ct. App. 2000)).  Although allegedly tortious, the transfer decision may have been within the Individual Defendants' scope of duties.

Whether an employee is acting within the scope of duties is generally a question of fact, and summary judgment is not appropriate unless "only one reasonable conclusion can be drawn" from the facts presented.  *Celaya*, 135 N.M. at 121, 85 P.3d at 245 (citing *Medina v. Fuller*, 126 N.M. 460, 466, 971 P.2d 851, 856 (Ct. App. 1998)); *see also McBrayer*, 129 N.M. at 786, 14 P.3d at 51).  In this case, the record was not specifically developed on this issue.  However, the following information may be gleaned from the affidavits and relevant statute.

As Director of Special Education for GISD, the duties of Ms. Ramos-Nevarez included overseeing the Program, appointing an on-site Administrator, supervising Ms. Bolanos, and transferring Ms. Bolanos.  (Def. Ex. A.)  The duties of Ms. Gallegos, as on-site Administrator included supervising teachers and giving input concerning the transfer.  (Def. Ex. C.)  When a record does not contain evidence concerning the scope of duties of an employee, it is appropriate to look to a statute to ascertain such information.  *See Vigil,* 138 N.M. at 68, 116 P.3d at 859.  As Superintendent, the duties of Mr. Haugen included fixing the salaries of and assigning all employees of the school district.  N.M. Stat. Ann.§ 22-5-14 (B)(3).

These factors establish that the "scope of duties" of the Individual Defendants encompassed participation in the decision to transfer Ms. Bolanos, the actual decision to transfer, and ratification of the transfer.  Thus, the Individual Defendant acted with their "scope of duties" when they committed alleged torts in connection withe the transfer.  *See* N.M. Stat. Ann. § 41-4-3(G); *Vigil,*

13

138 N.M. at 67-68, 116 P.3d at 858-59.  Because they were acting within the scope of duties, the

NMTCA applies.  Ms. Bolanos acknowledges, and the Court finds, that the NMTCA does not waive

immunity for the alleged torts committed by the Individual Defendants and that the complaint was

filed outside the two-year statute of limitations set by the NMTCA.  Summary judgment is

appropriate on the state-law claims because such claims are barred by the NMTCA.

**WHEREFORE,**

      **IT IS ORDERED** that Defendants' Motion for Summary Judgment (Doc. 26), filed on

August 8, 2006, is **DENIED** as to the First Amendment claim and **GRANTED** as to the state-law

claims.

_____
**ROBERT C. BRACK
UNITED STATES DISTRICT JUDGE**