IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CATHY BOLANOS,

        Plaintiff,

vs.                                  No. CIV 05-1062 RB/LAM

GADSDEN INDEPENDENT SCHOOL
DISTRICT, GADSDEN INDEPENDENT
SCHOOL DISTRICT BOARD, MARTHA
GALLEGOS, in her official and individual
capacities, SELMA RAMOS-NEVAREZ,
in her official and individual capacities,
and RON HAUGEN, in his official
and individual capacities,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court on Defendants' Renewed Motion for Judgment as a Matter of Law After Trial (Doc. 79), filed on June 12, 2007, and Plaintiff's Brief in Support of an Award for Prejudgment Interest (Doc. 80), filed on June 29, 2007. Jurisdiction arises under 28 U.S.C. § 1331 and 1367(a). Having considered the record, arguments of counsel, relevant law, and being otherwise fully advised, I find the renewed motion for judgment as a matter of law should be denied and the request for prejudgment interest should be granted.

**I.**        **Background.**

Following a series of adverse employment actions, Plaintiff brought this action under 42 U.S.C. § 1983 and the New Mexico Tort Claims Act, ("NMTCA"), N.M. Stat. Ann. §41-4-1 through 41-4-27. The case proceeded to a jury trial on May 29, 2007. At the close of Plaintiff's case, Defendants moved for judgment as a matter of law. The Court denied the motion from the bench.

On June 1, 2007, a jury returned a verdict for Plaintiff in the amount of $30,000 in

compensatory damages, as well as out-of-pocket psychiatric expenses and attorney fees incurred between Plaintiff's January 13, 2003 transfer and the date of the verdict.

Defendants filed a renewed motion for judgment as a matter of law on June 12, 2007. Plaintiff did not respond to this motion.

The Court directed counsel to submit a judgment on the verdict. Counsel were unable to agree on whether prejudgment interest should be awarded. By letter dated June 15, 2007, the Court directed counsel to brief issues relating to prejudgment interest, including the total amount requested, the date, or dates, from which such interest should accrue, and the appropriate interest rate.

Judgment has not issued.

## II.    Discussion.

### A.    Defendants' renewed motion for judgment as a matter of law is denied.

Judgment as a matter of law is appropriate only if "there is no legally sufficient evidentiary basis" to find in favor of the non-moving party. Fed. R. Civ. P 50; *see also EEOC v. Heartway Corp.*, 466 F.3d 1156, 1160 (10th Cir. 2006) ( "A party is entitled to judgment as a matter of law only if the evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position."). In assessing the record for a Rule 50 motion, the Court may not weigh evidence, judge witness credibility, or challenge the factual conclusions of the jury. *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1099 (10th Cir. 2001). The evidence, and any inferences drawn therefrom, must be considered in favor of the non-moving party. *Id*.

Defendants assert that this Court "should find that [Plaintiff's] speech did not involve a matter of public concern and that weighing the [sic] [Plaintiff's] interest in commenting upon such matters against the school district's interest in promoting efficiency must be weighed in favor of the

defendants." (Defs.' Mot. at 2.) With respect to the public concern argument, Defendants claim the evidence shows Plaintiff was responsible for preparing the 40-day report. (Defs.' Mot. at 3.) As to the second argument, Defendants claim the evidence shows Defendants would have transferred Plaintiff in the absence of Plaintiff's complaints about the 40-day report. (Defs.' Mot. at 4.)

In order to prevail on a First Amendment employment retaliation claim, the employee must show that (1) she spoke as a citizen on a matter of public concern; (2) her interest in engaging in the speech outweighed the government employer's interest in regulating it; and (3) the speech was a substantial motivating factor behind the government's decision to take an adverse employment action against the employee. *Garcetti v. Ceballos*, 126 S.Ct. 1951, 1958 (2006); *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968); *Baca v. Sklar*, 398 F.3d 1210, 1220 (10th Cir. 2005).

If an employee proves these three factors, the burden shifts to the employer to prove a fourth factor; "by a preponderance of the evidence that it would have reached the same decision . . . even in the absence of the protected conduct." *Baca,* 398 F.3d at1220 (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). The first two steps are legal questions designed to determine whether the First Amendment protects the employee's speech, the second two factors concern causation and involve questions of fact designed to determine whether the adverse employment action was in retaliation for the protected speech. *See Dill v. City of Edmond*, 155 F.3d 1193, 1202 (10th Cir. 1998).

In *Garcetti*, the Court held that the "controlling factor" in determining whether a public employee's speech is protected is whether those expressions were made pursuant to the employee's official duties: "We hold that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti*, 126 S.Ct

3

1960. As such, a fundamental question in this case was whether Plaintiff made the statements regarding the 40-day report pursuant to her official job duties.

Defendants argue that: (1) the trial testimonies of Plaintiff, Ms. Viramontes, and Ms. Gallegos establish that Plaintiff was responsible for preparing the 40-day report; and (2) GISD staff's expended effort to respond to Plaintiff's complaint to the State Police does not establish that GISD was involved in governmental inefficiency or misconduct in connection with the 40-day report. (Defs.' Mot. 3-4.)

The evidence is not as clear cut as Defendants would submit. While the evidence showed the 40-day report was within Plaintiff's job duties prior to August 2002, the evidence also showed that the 40-day report became Ms. Gallegos' duty in August 2002 and remained Ms. Gallegos' obligation thereafter. (Tr. 13-15.) Plaintiff testified that, as of August 2002, all of Plaintiff's administrative duties, including preparation of the 40-day report, were taken away. (Tr. 15; 70.) While Ms. Gallegos sought Plaintiff's assistance during the transition, and Plaintiff helped Ms. Gallegos prepare the report, and Plaintiff drove the report to the main office, the responsibility for the report rested with Ms. Gallegos, and not Plaintiff, as of August 2002. (Tr. 13-15; 70.)

Defendants do not elaborate on their argument concerning the effort expended by GISD staff to respond to Plaintiff's police report. Defendants' reasoning on this point is not readily apparent. The gist of Plaintiff's speech about the 40-day report was that Defendants fraudulently inflated the number of special education students to obtain additional funding from the State. The fact that GISD staff responded to inquiries from the State Police regarding the matter does not negate a finding that Plaintiff spoke as a citizen on a matter of public concern.

In essence, Defendants advocate for a sanitized and overly simplistic view of the facts that does not comport with the governing standard for viewing the facts at this stage of the litigation.

While there was evidence on both sides of the question, a legally sufficient evidentiary basis was presented at trial to support the jury's finding in favor of Plaintiff that she spoke as a citizen on a matter of public concern.

Defendants additionally argue the trial evidence establishes Defendants would have transferred Plaintiff in the absence of her complaints about the 40-day report. (Defs.' Mot. at 4.) According to Defendants, the evidence was clear that Plaintiff was transferred because Plaintiff had "personnel problems" with other teachers. Once again, Defendants take a rose colored view of the evidence inconsistent with the Rule 50 standard.

On cross examination, Plaintiff admitted to a dispute with one other teacher. (Tr. 90-91.) However, Plaintiff explained that the dispute involved the other teacher shoving Plaintiff. (Tr. 89-90.) Evidence was also adduced that Plaintiff was a highly experienced and effective teacher who was reassigned from her long-standing position within weeks of complaining to Defendant Haugen about the 40-day report. (Tr. 23-26; 41-47.) A legally sufficient evidentiary basis was presented at trial to support the jury's finding that the Defendants would not have imposed the adverse employment actions in the absence of the protected conduct. As such, the evidence was sufficient to support the jury's finding in favor of Plaintiff.

    **B.**  **Plaintiff should be awarded prejudgment interest.**

Plaintiff seeks prejudgment interest at a rate of nine percent (9%) per annum. Plaintiff reasons that: (1) the Court of Appeals for the Tenth Circuit has found that fixing the rate of prejudgment interest by reference to a state's prejudgment interest rate did not constitute an abuse of discretion; (2) the requested rate is one point greater than the eight percent (8%) prejudgment interest rate affirmed in *Allison v. Bank One-Denver*, 289 F.3d 1223, 1244 (10th Cir. 2002), which was calculated by reference to the Colorado statutory maximum; and (3) the requested rate is "one

point less than the [New Mexico] statutory maximum" of ten percent (10%). (Pl.'s Brief 2-3 (citing N.M. Stat. Ann. § 56-8-4(B).) Plaintiff does not identify the date, or dates, from which such an award of prejudgment interest should accrue or set out the total amount of prejudgment interest requested.

Defendants respond that any interest award is inappropriate because: (1) the damages awarded by the jury - "[g]iven the nature of [Plaintiff's] claims, the claim for ongoing and continuing damages" - were "for present and future damages, as well as for past damages"; (2) Plaintiff's actions delayed this litigation and, thus, "it would be unfair to Defendants to be required to pay interest"; and (3) "Plaintiff's unreasonable demands made it impossible to settle this case prior to trial." (Defs.' Resp. 4.)

In the event the Court grants prejudgment interest, Defendants contend that the rate should be equal to that which Plaintiff could have recovered "had she privately invested the money beginning on the date that she filed her first amended complaint." (*Id.*) Defendants contend, therefore, the interest rate should be fixed between one percent (1%) and five percent (5%). (*Id.* (noting that currently savings accounts begin at one percent, while certificates of deposit "cap out" at five percent).) Defendants do not address the date(s) from which prejudgment interest should accrue.

> In the Tenth Circuit:
>
> Although prejudgment interest is ordinarily awarded in a federal case, it is not recoverable as a matter of right. Rather, such an award is governed by a two step analysis. First, the trial court must determine whether an award of prejudgment interest would serve to compensate the injured party. Second, when an award would serve a compensatory function, the court must still determine whether the equities would preclude the award of prejudgment interest.

*Zuchel v. City & County of Denver*, 997 F.2d 730, 746 (10th Cir. 1993) (affirming district court's

refusal to award prejudgment interest). As to the first prong, "[the] determination . . . is guided by reference to the purpose for granting prejudgment interest on back pay awards." *Reed v. Mineta*, 438 F.3d 1063, 1066 (10th Cir. 2006). That is, "to compensate the wronged party for being deprived of the monetary value of his loss from the time of the loss to the payment of judgment." *U.S. Indus., Inc. v. Touche Ross & Co.*, 854 F.2d 1223, 1256 (10th Cir. 1988), *implied overruling on other grounds recognized by Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1231 (10th Cir. 1996)).

Plaintiff contends that prejudgment interest would meet both prongs. She explains it would be "an equitable and just" outcome in that it would compensate her "for monies due and lost immediately upon demotion." (Pl.'s Mot. 2.) Defendants, however, argue that prejudgment interest is inappropriate here because "the equities in this matter do not favor such an award." (Defs.' Resp. 2.) Specifically, Defendants contend that "Plaintiff has been dilatory in the pursuit of her claims in several regards." (*See id*. 2-3)

Put simply, Defendants' position is unavailing. At the outset, it bears mention that the $30,000 jury award is best construed as compensation for back-pay and benefits that were wrongfully denied Plaintiff due to Defendants' unlawful conduct. As such, prejudgment interest should be awarded, incrementally, from the first date Plaintiff "actually sustain[ed] monetary injury." *Reed*, 438 F.3d at 1066. Here, therefore, prejudgment interest should run - again, incrementally - from the date Plaintiff was wrongfully demoted.

Further, Plaintiff's conduct in litigating this matter was not dilatory such that the equities weigh against a prejudgment award here. *See Big Elk v. Board of County Comm'r*, 3 F. A'ppx 802, 808 (10th Cir. 2001) ("A delay in filing may be taken into account in making a determination on prejudgment interest."); *see generally Zuchel*, 997 F.2d at 746 ("prejudgment interest is ordinarily awarded"). Defendants' arguments to the contrary are, again, unavailing. As such, a prejudgment

7

interest award is appropriate in the instant matter.

As to fixing the interest rate itself, Plaintiff arrives at her proposed 9% rate by reference to N.M. Stat. Ann. § 56-8-4, New Mexico's statutory prejudgment interest provision, as well as the Tenth Circuit's *Allison* decision. Notably, a 9% interest rate is one-point lower than the maximum allowed under N.M. Stat. Ann. § 56-8-4. Defendants suggest that a rate of between one and five percent would be appropriate.

The parties agree that the rate of interest to be imposed is wholly within this Court's discretion. Plaintiff's reasoning is sound and refers to the New Mexico statutory rate. By contrast, Defendants cite no authority supporting their proposal. If Plaintiff had to charge an amount equivalent to her lost income on a credit card, a rate in excess of 9% would have applied. In light of the circumstances of this case (i.e., a teacher being deprived of a portion of her annual income since January 2003), I find the 9% per annum rate appropriate.

Having found prejudgment interest appropriate and determined the rate, I turn to calculation of the award. Generally, district courts are afforded "great discretion in calculating prejudgment interest." *Reed*, 438 F.3d at 1067. But clearly, "the district court's award" - and, therein, the "method of calculation employed by the district court"- "must be based on the evidence and the injury sustained." *Id*.

Accordingly, "district courts should calculate interest on back pay and past damages based on the date of the adverse employment action . . . . The purpose of making discrimination victims whole is limited, however, by recognition that *prejudgment interest does not accrue until the victim actually sustains monetary injury. Reed*, 438 F.3d at 1066 (emphasis added); *see also id*. (citing *Downes v. Volkswagen of Am., Inc.*, 41 F.3d 1132, 1144 (7th Cir. 1994) (holding that plaintiff did not suffer monetary loss until his severance pay ceased; error for district court to calculate interest

from date plaintiff "was informed of his impending termination")); *see Thomas* v. *Tex. Dep't Criminal Justice*, 297 F.3d 361, 372 (5th Cir. 2002) (holding that prejudgment interest accrued from the date plaintiff would have received the first pay check for the promotion she was unlawfully denied). *cf. Daniel v. Loveridge*, 32 F.3d 1472, 1478 (10th Cir. 1994) ("Under Title VII, a district court is authorized to grant prejudgment interest on a back pay award. Otherwise, the employer would have an 'interest free' loan on wages due, but unpaid." (citations omitted)).

The "general rule . . . is that interest runs 'from the time of the loss to the payment of judgment.'" *Pabst v. Okla. Gas & Elec. Co.*, 228 F.3d 1128, 1136 (10th Cir. 2000) (quoting *Zuchel*, 997 F.2d at 746) (rejecting argument that prejudgment interest should only be awarded from the date the complaint is filed). The Tenth Circuit has recognized that it is "erroneous" for a district court to "calculate prejudgment interest on [a plaintiff's] entire back pay award as of the date" of the initial actual monetary injury where the plaintiff did not "actually suffer all $248,356 of monetary injury at that time." *Reed*, 438 F.3d at 1067. Where "monetary injuries [are] incrementally inflicted from the date of his [initial monetary injury] through entry of judgment as each pay period passed and [the plaintiff went unpaid," prejudgment interest should be "calculated to coincide therewith." *Id*.

While the trial testimony indicated that Plaintiff lost income as a result of the January 13, 2003 transfer and subsequent adverse employment actions, (tr. 59-62; 65-70), the exact dates and amounts were not clearly set out at trial. For this reason, I directed counsel to include this matter in their briefs. Contrary to my instructions, counsel failed to include such information in their briefs. The failure to comply with my directive constitutes a waiver of the argument. *See* D.N.M. LR-Civ. 7.1(b) ("[t]he failure of a party to file and serve a response in opposition to a motion within the time prescribed for doing so constitutes consent to grant the motion.").

Plaintiff testified that her income was reduced as of the beginning of the 2003-2004 school year. (Tr. 59-62.) While the start date for the 2003-2004 school year was not provided by counsel, I take judicial notice that GISD's website states that the 2006-2007 school year, the earliest school year listed on the website, started on August 1, 2006. *See* http://www.gisd.k12.nm.us/06-07%20traditional.pdf. This information indicates to a reasonable degree of certainty that the 2003-2004 school year began on or about August 1, 2003. Based on the factors discussed herein, I award Plaintiff prejudgment interest at the rate of 9% per annum from August 1, 2003 through the date of judgment.

    **IT IS SO ORDERED.**

_____
**ROBERT C. BRACK
UNITED STATES DISTRICT JUDGE**